UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

HOUSTON CASUALTY COMPANY,

               Plaintiff,                         Case No. _____

- against -

PAUL RYAN ASSOCIATES, INC. dba
RYAN ASSOCIATES,

               Defendant.
-------------------------------------------------------------------X

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Houston Casualty Company ("Houston Casualty"), by and through its counsel, DLA Piper LLP, as and for their Complaint for Declaratory Judgment and other Relief against Defendant Paul Ryan Associates, Inc. dba Ryan Associates ("Ryan Associates") alleges as follows:

### THE NATURE OF THIS ACTION

1.     This insurance coverage and declaratory judgment action arises out an underlying Demand for Arbitration entitled *Susan Hayden v. Ryan Associates*, Case No. 01-16-0005-3158, filed with the American Arbitration Association on or about December 7, 2016 (the "*Hayden Arbitration Demand*").

2.     In the *Hayden Arbitration Demand*, Susan Hayden ("Hayden") seeks over $6,372 million in damages based on Ryan Associates' alleged defective work, breach of contract and fraud in the construction of Hayden's multimillion dollar home located at 1100 Flying Point Road, Water Mill, New York (the "Project").

1

3.      Ryan Associates was the alleged general contractor for the Project and retained all of the trades and subcontractors for the Project.

4.      The *Hayden Arbitration Demand* alleges, among other things, that Ryan Associates failed to meet the completion deadline on several occasions, failed to meet the guaranteed maximum price, performed substandard work, and failed to properly supervise all subcontracted work at the Project.

5.      The *Hayden Arbitration Demand* also alleges that Ryan Associates – through its President, Jim Friedman – committed fraud by lying about the status of the Project, including whether it would be completed on time, and misleading Hayden to make arrangements to move into the home on July 15, 2016, when Ryan Associates knew the home would be completed by that date. (Attached hereto as **Exhibit A**)

6.      Houston Casualty Company issued three commercial general liability insurance contract numbers to Ryan Associates: (1) H14PC30366-00, with a policy period of September 10, 2014 to July 1, 2015 (the "2014-2015 insurance contract"); (2) H15PC30366-01, with a policy period of July 1, 2015 to July 1, 2016 (the "2015-2016 insurance contract"); and (3) H16PC30366-02 (the "2016-2017 insurance contract") (together, the "Houston Casualty insurance contracts," attached hereto as **Exhibits B, C, and D**).

7.      The Houston Casualty insurance contracts cover "'bodily injury' or 'property damage' [] caused by an 'occurrence,'" but only if the "'bodily injury' or 'property damage' occurs during the policy period."

8.      The Houston Casualty insurance contracts do not cover, among other things, claims for property damage to "(5) [t]hat particular part of real property on which you [Ryan Associates] or any contractors or subcontractors working directly or indirectly on your behalf are

2

performing operations, if the 'property damage' arises out of those operations; or (6) [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

9.      Ryan Associates first notified Houston Casualty about the claim on or about August 3, 2016, when Hayden filed a Mediation Request with the American Arbitration Association. (Attached hereto as **Exhibit E**)

10.      By letter dated November 29, 2016, Houston Casualty issued a full and complete reservation of rights to Ryan Associates in response to Ryan Associates' tender of Hayden's Mediation Request. (Attached hereto as **Exhibit F**)

11.      By letter dated December 19, 2017, Houston Casualty issued an updated reservation of rights to Ryan Associates with respect to the *Hayden Arbitration Demand*. (Attached hereto as **Exhibit G**)

12.      Houston Casualty continues to provide a defense to Ryan Associates with respect to the *Hayden Arbitration Demand*, subject to a full and complete reservation of rights.

13.      Houston Casualty has incurred and continues to incur costs, fees, and expenses with respect to providing a defense to Ryan Associates, subject to a full and complete reservation of rights, for the *Hayden Arbitration Demand*.

14.      Based on the terms, provisions, conditions and exclusions in the Houston Casualty insurance contracts, there is no coverage for Ryan Associated and/or anyone for the claims alleged in the *Hayden Arbitration Demand*.

15.      In this action, Houston Casualty seeks a judicial declaration of the respective rights and obligations of the parties to the Houston Casualty insurance contracts and a judicial declaration that Houston Casualty has no obligation to defend or indemnify Ryan Associates

and/or anyone with respect to the *Hayden Arbitration Demand* based on the terms, provisions, conditions, and exclusions of the Houston Casualty insurance contracts.

16.     Houston Casualty also seeks an order requiring Ryan Associates to reimburse Houston Casualty for any costs, fees, expenses or indemnity that Houston Casualty may incur with respect to the *Hayden Arbitration Demand*, and to make full restitution for all monies it wrongfully obtained from Houston Casualty.

## JURISDICTION AND VENUE

17.     Houston Casualty files this action under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

18.     Jurisdiction of this Court over this action is invoked pursuant to 28 U.S.C. §1332(a)(1). The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000).

19.     There is complete diversity of citizenship between Houston Casualty and Defendant.

20.     Venue in this District is proper under 28 U.S.C. § 1391(a) (1), (3) and (c).

21.     An actual case and controversy of justiciable nature exists between the parties, involving the rights and obligations of the parties under the insurance contract issued by Houston Casualty.

22.     All conditions precedent to this action have been performed or otherwise occurred.

23.     Houston Casualty is, therefore, entitled to bring the instant declaratory relief action in this Court.

## THE PARTIES

24.　　Houston Casualty is a Texas corporation with a principal place of business in Houston, Texas.

25.　　Paul Ryan Associates, Inc. dba Ryan Associates is a California corporation that maintains a place of business at 7 West 22nd Street, New York, New York 10010.

26.　　Ryan Associates was served with process in the *Hayden Arbitration Demand* at its place of business located at 7 West 22nd Street, New York, New York 10010.

## THE UNDERLYING *HAYDEN ARBITRATION DEMAND*

27.　　On or about March 28, 2014, Hayden contracted with Ryan Associates to build the Project (the "Hayden-Ryan Associates contract"). (Attached hereto as **Exhibit H**)

28.　　On or about August 3, 2016, Hayden filed a Mediation Request before the American Arbitration Association alleging that Ryan Associates performed faulty work at the Project and made fraudulent statements to Hayden about the status of the Project. (**Ex. E**)

29.　　On or about December 7, 2016, Hayden filed the *Hayden Arbitration Demand* against Ryan Associates. (**Ex. A**)

30.　　The *Hayden Arbitration Demand* seeks over $6.372 million in damages against Ryan Associates due to alleged construction defects, delays, and fraudulent statements by Ryan Associates arising out of the construction of the Project.

31.　　The *Hayden Arbitration Demand* alleges that Hayden retained Ryan Associates to build the home, but "[o]ver two-and-a-half years after construction began, nine months after the Project was slated to be complete, and millions of dollars beyond the original budget, the project remains incomplete and the residence uninhabitable." (**Ex. A** ¶¶1-2)

32.　　The *Hayden Arbitration Demand* also alleges, among other things as follows:

5

(a) Ryan Associates performed "negligent and substandard work," and "Ryan Associates' principal, Jim Friedman, also committed fraud by knowingly and recklessly making false statements to Mrs. Hayden concerning the status of the Project...." (**Ex. A** ¶¶1-2)

(b) The Project was initially contracted to be completed by February 1, 2016, for a total cost of $16.67 million.  (**Ex. A** ¶¶11-13)

(c) Construction of the project began in April 2014, but by December 2014, delays caused the completion date to be moved back to March 2016. (¶14) Further delays caused the completion date to be pushed back to May 30, 2016. (**Ex. A** ¶¶11-13)

(d) On March 19, 2016, Mrs. Hayden and Ryan Associates agreed to a final completion date of July 15, 2016. However, the Hayden-Ryan Associates contract was amended to include a new "substantial completion" date for the project of July 15, 2016. (the "March Amendment") (**Ex. A** ¶¶15-17).

(f) The March Amendment also set the "Guaranteed Maximum Price" for the Project at $19 million and provided for the following liquidated damages to the extent that Ryan Associates did not complete its work on time: (1) $10,000 per week already accruing from the contractual completion date of February 1, 2016 to July 15, 2016, and (2) $20,000 per week beginning July 15, 2016 until the Project was completed.(**Ex. A** ¶21)

(g) Ryan Associates did not complete the project by July 15, 2016, exceeded the $19 million budget, and stated that it could not cover the overage. (**Ex. A** ¶23)

(h) Ryan Associates attempted to meet the $19 million budget cap by "using lower quality labor and services, resulting in substandard work, which now costs additional money to correct." (**Ex. A** ¶31)

(i) Ryan Associates performed low quality work, failed to properly supervise and manage subcontractors, allowed subcontractors to "self correct" their own defective and incorrect work, had frequent staff turnover, and "used smoke and mirrors to give the appearance of a fully functioning and attentive team that did not actually exist." (**Ex. A** ¶34-39)

(j) There were numerous construction-related defects at the project arising out of Ryan Associates' faulty work, including the removal and replacement of the living room, vertical cedar siding, defective walls and corner beads, and "overall poor quality skim coat, the quality of paint and the application thereof was inferior." (Ex A ¶41)

33. The *Hayden Arbitration Demand* alleges that Ryan Associates' negligent work allegedly will cost an estimated $4,905,488 to fix above the $19 million cap.

34.     The *Hayden Arbitration Demand* further alleges that Mr. Friedman of Ryan Associates made false statements to Hayden that the Project would be completed on time, which Hayden relied upon to her detriment. (**Ex. A** ¶45)

35.     In addition, the *Hayden Arbitration Demand* alleges that, after Ryan Associates' termination, Hayden contracted with Mayfair Construction Group, LLC ("Mayfair") to complete the Project. Mayfair estimated that it would cost an additional $4,905,488 to complete the Project. (**Ex. A** ¶¶62-63)

36.     The *Hayden Arbitration Demand* asserts causes of action for breach of contract and fraud against Ryan Associates, and seeks $6,372,435, plus interest.

## HOUSTON CASUALTY'S POSITION LETTERS

37.     Ryan Associates first notified Houston Casualty about the claim on or about August 3, 2016, when Hayden filed a Mediation Request with the American Arbitration Association. (**Ex. E**)

38.     By letter dated November 29, 2016, Houston Casualty issued a reservation of rights to Ryan Associates in response to Ryan Associates' tender of Hayden's Mediation Request. (**Ex. F**)

39.     By letter dated December 19, 2017, Houston Casualty issued an updated reservation of rights to Ryan Associates with respect to the *Hayden Arbitration Demand*. (**Ex. G**)

## THE HOUSTON CASUALTY INSURANCE CONTRACTS

40.     Houston Casualty Company issued three commercial general liability insurance contract numbers to Ryan Associates: (1) H14PC30366-00, with a policy period of September 10, 2014 to July 1, 2015 (the "2014-2015 insurance contract"); (2) H15PC30366-01, with a policy period of July 1, 2015 to July 1, 2016 (the "2015-2016 insurance contract"); and (3)

H16PC30366-02 (the "2016-2017 insurance contract") (together, the "Houston Casualty insurance contracts," which are attached hereto as **Exhibits B, C, and D**).

41.     Among other things, the Houston Casualty insurance contract states as follows:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     **Insuring Agreement**

  a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  (1)     The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

  (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

* * *

  b.     This insurance applies to "bodily injury" and "property damage" only if:

  (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (2)     The "bodily injury" or "property damage" occurs during the policy period;

* * *

2.     **Exclusions**

This insurance does not apply to:

* * *

  j.     **Damage To Property**

  "Property damage" to:

  (1)     Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

8

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products- completed operations hazard".

\* \* \*

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products- completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

9

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\* \* \*

**4.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b.    Excess Insurance**

(1)    This insurance is excess over:

(a)    Any of the other insurance, whether for primary, excess, contingent or on any other basis:

(i)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

* * *

(b)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2)    When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3)    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b)    The total of all deductible and self-insured amounts under all that other insurance.

(4)    We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

11

    **c.**    **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurers share is based on the ratio of its applicable limit of insurance to the total applicable limits of all insurers.

\* \* \*

## SECTION V - DEFINITIONS

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

16.    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.

            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

17.    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

22.    "Your work":

    **a.**    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)    The providing of or failure to provide warnings or instructions.

* * *

<strong>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</strong>

<strong>EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY</strong>

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.    Supervisory, inspection, architectural or engineering activities.

* * *

<strong>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</strong>

13

## EXCLUSION - DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

1)      All work insured under project specific policies.
2)      All work performed outside the state of New York


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION - DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):**

1)      All work insured under project specific policies.
2)      All work performed outside the state of New York

**Specified Location (If Applicable):**


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether

14

such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf.  If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     **Section I — Coverages, - Coverage A — Bodily Injury And Property Damage Liability, 1. Insuring Agreement, B.(3),** is deleted.

B.     **Section I — Coverages, - Coverage A - Bodily Injury And Property Damage Liability, 1. Insuring Agreement, c.** is deleted and replaced by the following:

      c.     "Bodily injury" or "property damage" which occurs during the policy period includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

C.     **Section I - Coverages, - Coverage A - Bodily Injury And Property Damage Liability, 1. Insuring Agreement, d.** is deleted

D.     The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

      **2.**     **Exclusions**

      This insurance does not apply to:

      **Continuous or Progressive Injury and Damage**

      "Bodily Injury" or "property damage"

      (1)     Which first existed, or is alleged to have first existed, prior to the inception date of this Policy; or

      (2)     Which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

(3)    Which were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this Policy.

\* \* \*

42.    Based upon the terms, conditions, provisions, limitations and exclusions of the Houston Casualty insurance contracts, Houston Casualty has no coverage obligation to Ryan Associates and/or anyone with respect to the *Hayden Arbitration Demand* because Ryan Associates was the general contractor for the Project and the claim arises out of Ryan Associates' faulty work at the Project, which is not a covered "occurrence" under the Houston Casualty insurance contracts. Further, the *Hayden Arbitration Demand* does not allege property damage that occurred during the Houston Casualty insurance contract periods, the loss was known to Ryan Associates before the 2015-2016 and 2016-2017 insurance contracts incepted, and exclusions j, l, m, and the Exclusion - Continuous Or Progressive Injury And Damage apply.

43.    Therefore, Houston Casualty requests a judicial declaration relieving it of any coverage obligation to Ryan Associates and/or anyone with respect to *Hayden Arbitration Demand*. Houston Casualty also seeks an award of all defense and any indemnity payments it has incurred or will incur with respect to the *Hayden Arbitration Demand*, plus interest thereon.

## FIRST CAUSE OF ACTION

44.    Houston Casualty repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

45.    Houston Casualty is entitled to a declaration that it has no coverage obligation whatsoever under the Houston Casualty insurance contracts for the *Hayden Arbitration Demand*. Without waiving and while expressly preserving and incorporating each of the provisions in the Houston Casualty insurance contracts, Houston Casualty respectfully submits that it is entitled to such a declaration for the following reasons:

16

a.      There is no coverage on the ground that the *Hayden Arbitration Demand* does not allege a covered "occurrence" within the meaning of the Houston Casualty insurance contracts. Among other things, the *Hayden Arbitration Demand* alleges that Ryan Associates: (i) was the general contractor for the Project, (ii) retained all subcontractors, (iii) was responsible for the construction of the Project, and (iv) performed faulty work, leading to numerous construction defects, which breached the Hayden-Ryan Associates contract. Allegations of damage to the Project caused by Ryan Associates' own faulty work are not covered under the Houston Casualty insurance contracts.

b.      There is no coverage on the grounds and to the extent that there is no covered "property damage" during the 2014-2015 Houston Casualty insurance contract period. The 2014-2015 Houston Casualty insurance contract period was from September 10, 2014 to July 1, 2015. The *Hayden Arbitration Demand* does not allege any damage occurring during the 2014-2015 insurance contract period.

c.      There is no coverage on the ground that the loss was known to Ryan Associates before the 2016-2017 insurance contract incepted. The *Hayden Arbitration Demand* alleges that by at least March 2016, Ryan Associates knew about the alleged defects at the project and Project completion delays, and agreed to the March Amendment that included liquidated damages penalties. The 2016-2017 insurance contract incepted on July 15, 2016.

d.      There is no coverage on the grounds that exclusions j., l, and m. relative to damage to property, damage to your work, and damage to impaired property apply. Among other things, the *Hayden Arbitration Demand* action alleges that Ryan Associates was the general contractor for the Project, Ryan Associates performed faulty work at the project, which lead to numerous construction defects and breached the Hayden-Ryan Associates contract.

17

e.      There is no coverage on the ground that the Exclusion – Continuous or Progressive Injury or Damage applies. Among other things, the *Hayden Arbitration Demand* alleges continuous, ongoing damage and defects at the Project before the 2016-2017 insurance contract incepted.

f.      There is no coverage on the ground and to the extent that there was a breach of any conditions precedent to coverage of the Houston Casualty insurance contracts, including the requirements regarding furnishing adequate, proper and timely written notice of alleged occurrences, losses, suits and claims, immediately forwarding documents, voluntary payments, admission of liability, failure to cooperate, failure to obtain consent, failure to mitigate damages, and/or any prejudice to the Houston Casualty's rights.

g.      There is no coverage on the ground and to the extent that anyone has, for any losses allegedly covered by the Houston Casualty insurance contracts, other insurance, co-insurance, self-insurance, deductibles, retentions, collateral sources of money, or other contractual indemnitors or to extent that the Houston Casualty insurance contracts provide limited or no insurance based on an allocation or to extent that the Houston Casualty insurance contracts constitute excess insurance. The Houston Casualty insurance contracts are excess of such additional insurance and any other insurance.

h.      There is no coverage on the ground and to the extent that the Exclusion – Designated Work endorsement applies.

i.      There is no coverage on the ground and to the extent that the Exclusion – Designated Ongoing Operations applies.

18

j.   There is no coverage on the ground and to the extent that there was any misrepresentation and/or failure to disclose with respect to the procurement of the Houston Casualty insurance contracts.

46.   Houston Casualty's grounds for asserting that there is no coverage under the Houston Casualty insurance contracts for the *Hayden Arbitration Demand* are based upon the facts available to Houston Casualty at this time. Houston Casualty reserves the right to raise any additional grounds in the future should Houston Casualty determine such grounds to exist.

## SECOND CAUSE OF ACTION

47.   Houston Casualty repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

48.   The Houston Casualty insurance contracts are and remain valid and legally enforceable agreements.

49.   Houston Casualty has performed all promises, covenants, and obligations required of it pursuant to the terms of the Houston Casualty insurance contracts, except as such performance may have been excused or prevented.

50.   The Houston Casualty insurance contracts specifically require that a claim allege injury or damage caused by an "occurrence" and that the injury or damage occur during the Houston Casualty insurance contracts' periods.

51.   The *Hayden Arbitration Demand* seeks damages due to Ryan Associates' faulty construction work that damaged the Project. Such a claim does not constitute a covered occurrence under the Houston Casualty insurance contracts.

52.   The *Hayden Arbitration Demand* does not allege covered injury or damage occurring during the 2014-2015 insurance contract period.

19

53.     The Houston Casualty insurance contracts contain exclusions barring coverage for property damage to "(5) [t]hat particular part of real property on which you [Ryan Associates] or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

54.     They also exclude coverage for property damage to "'[i]mpaired property' or property that has not been physically injured, arising out of: .. [a] defect, deficiency, inadequacy or dangerous condition in "your product" or "your work."

55.     The *Hayden Arbitration Demand* seeks damages due to Ryan Associates' faulty construction work as general contractor that caused numerous construction defects, damaged the Project, and breached the Hayden-Ryan Associates contract. Such a claim is excluded by the Houston Casualty insurance contracts.

56.     The Houston Casualty insurance contracts contain an Exclusion – Continuous or Progressive Injury or Damage endorsement barring coverage for "'property damage (1) [w]hich first existed, or is alleged to have first existed, prior to the inception date of this Policy; or (2) [w]hich are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or (3) [w]hich were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this Policy."

57.     The *Hayden Arbitration Demand* alleges that, by at least March 2016, Ryan Associates knew about the alleged defects at the Project and the completion delays and agreed to the March Amendment that included liquidated damages penalties. As such, the defects existed,

were ongoing, and the loss was known to Ryan Associates before the 2016-2017 insurance contract incepted on July 15, 2016.

58.     The Houston Casualty insurance contracts also contain other insurance provisions stating that the insurance is excess over any primary insurance available to the insured "covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement."

59.     Upon information and belief, Ryan Associates has other insurance to which the Houston Casualty insurance contracts are excess.

60.     By letter dated November 29, 2016, Houston Casualty fully and completely reserved its rights with respect to the Mediation Request.

61.     By letter dated December 19, 2017, Houston Casualty fully and completely reserved its rights with respect to the *Hayden Arbitration Demand*.

62.     Houston Casualty continues to provide a defense to Ryan Associates with respect to the *Hayden Arbitration Demand*, subject to a full and complete reservation of rights.

63.     Houston Casualty has incurred and continues to incur costs, fees, and expenses with respect to providing a defense to Ryan Associates, subject to a full and complete reservation of rights, for the *Hayden Arbitration Demand*.

64.     Ryan Associates has been unjustly enriched by Houston Casualty providing a defense to Tully for the *Hayden Arbitration Demand*.

65.     Because there is no coverage for the *Hayden Arbitration Demand* under the Houston Casualty insurance contracts, Houston Casualty has been damaged in the amount of

attorneys' fees, costs, and expenses it has incurred and will incur, plus interest, with respect to the defense it is providing to Ryan Associates in the *Hayden Arbitration Demand*.

66.     Houston Casualty is entitled to a money judgment from Ryan Associates for all amounts Houston Casualty has incurred and will incur on Ryan Associates' behalf for the *Hayden Arbitration Demand* under the Houston Casualty insurance contracts, plus interest.

## PRAYER FOR RELIEF

A.     With respect to the First Cause of Action, declaring that Houston Casualty owes no coverage obligation to Ryan Associates and/or anyone under the Houston Casualty insurance contracts with respect to the *Hayden Arbitration Demand*;

B.     With respect to the Second Cause of Action, awarding Houston Casualty a money judgment against Ryan Associates in an amount to be determined, reimbursing Houston Casualty, in whole or in part, for any amounts that Houston Casualty has paid or will pay on behalf of Ryan Associates from the Houston Casualty insurance contracts, plus interest, for the *Hayden Arbitration Demand*; and

C.     Awarding Houston Casualty such other and further relief as the Court may deem appropriate.

## JURY DEMANDED

Houston Casualty demands trial by jury of all issues so triable.

Dated:  April 3, 2018

Aidan M. McCormack (AM3017)
aidan.mccormack@dlapiper.com
Cyril E. Smith (CS8359)
cyril.smith@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
**T**   212.335.4500

*Attorneys for Plaintiff*
*Houston Casualty Insurance Company*

149068215.1